J. A09008/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM N. WAITE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1783 MDA 2015 |
| | : | |
| ARGENTO FAMILY PARTNERSHIP | : | |

Appeal from the Order Entered September 29, 2015,
in the Court of Common Pleas of York County
Civil Division at No. 2013-SU-002120-71

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 20, 2016**

William N. Waite ("Waite") appeals from the order of September 29, 2015, granting summary judgment for defendant/appellee, Argento Family Partnership ("Argento"), in this slip and fall case.  After careful review, we reverse.

In his complaint filed June 18, 2013, Waite alleged as follows:

1.     Plaintiff, [Waite], is an adult individual residing at 3630 Springetts Drive, York, Pennsylvania 17402.

2.     The Defendant, Argento [], is a limited liability partnership registered and operating under the laws of the Commonwealth of Pennsylvania.

3.     [Argento], at all times relevant hereto, was the owner of and in complete custody and control of the real property located at 2861 East Prospect Road, York, York County, Pennsylvania 17402 (hereinafter

---

* Retired Senior Judge assigned to the Superior Court.

"the Premises"), including but not limited to the shopping center located thereon, its parking lots, walkways, sidewalks, and structures.

4.   [Waite] was at all relevant times a business invitee on the Premises.

. . . .

6.   On July 3, 2012, at approximately 2:00 p.m., [Waite] was at the shopping center located at the Premises for the purposes of purchasing goods from Steinmetz Coins & Currency, a vendor whose place of business was located in said shopping center.

7.   [Waite] parked his vehicle in the parking lot of the Premises, entered Steinmetz Coins & Currency, made a purchase and left the establishment.

8.   Intending on returning to his vehicle, [Waite] proceeded to walk on a concrete sidewalk in front of and parallel to the storefronts and adjacent to the parking lot of the Premises.

9.   As he walked on said sidewalk toward his vehicle, [Waite] encountered a single undelineated riser step in the concrete sidewalk measuring 5 ¾ inches in height. Mr. Waite's path of travel required him to step down off of this step.

10.  Just beyond the step were situated two Adirondack-style chairs with their seats facing north toward Prospect Street.

11.  As [Waite] walked toward his vehicle, he stepped across the single undelineated step expecting a flush surface on the other side. The unexpected drop in height caused [Waite] to fall forward, striking his face, and in particular, his left eye, on one of the

> Adirondack chairs positioned on the sidewalk beyond the step, causing serious injury.
>
> 12. The single step at issue was a dangerous latent condition in that this step across a sidewalk is unusual and hazardous; the color of the concrete on the top and bottom of the step was the same in color and texture and provided no indication of the change in elevation; the edge of the step was parallel with, and spaced similarly to, the joints in the sidewalk, and it was not marked in any way to make it conspicuous to pedestrians such as [Waite].

Complaint, 6/18/13 at 1-3; docket #37.

Waite alleged that Argento was negligent for failing to avoid using a single step where possible; or alternatively, for failing to delineate the hazardous step with an obvious visual cue such as a warning sign or a contrast in surface colors. (*Id.* at 4.) Waite alleged that Argento's negligence was the proximate cause of his serious injuries including to his left eye. (*Id.*) In addition to his own deposition testimony, Waite deposed John David Hughes ("Hughes"), an employee of a tattoo parlor, "Tattooing by Mee," located on the Premises. Hughes witnessed Waite's fall and offered assistance. Waite also presented an expert report by Lawrence C. Dinoff ("Dinoff"), an architect, who concluded that the unmarked single step where Waite fell was dangerous in a manner that caused his fall. (Dinoff's report, 7/30/14 at 5.) According to Dinoff, if Argento chose not to remove or modify the single riser step, which is a well-documented hazard to pedestrians, then it should have at least

provided visual cues or warnings so that pedestrians such as Waite could detect and avoid the hazardous condition. (*Id.* at 6.)

Argento filed a motion for summary judgment on May 1, 2015, arguing that Waite failed to establish a ***prima facie*** case of negligence. On September 29, 2015, the trial court granted the motion, finding that there was no evidence that the step caused Waite's fall and subsequent injuries. (Opinion and Order, 9/29/15 at 3.) The trial court determined that Waite's testimony and that of the witness to the fall, Hughes, could not identify the cause of Waite's fall, only that he ended up on the ground. (***Id.***) Furthermore, the trial court found that even assuming Waite fell because of the single step, it was an obvious feature of the property of which Waite should have been aware. (***Id.***)

Waite filed a timely notice of appeal on October 14, 2015. Waite complied with Pa.R.A.P. 1925(b), and on November 12, 2015, the trial court filed a Rule 1925(a) opinion, relying on its prior Opinion and Order of September 29, 2015, granting Argento's motion for summary judgment.

Waite has raised the following issues for this court's review:

> 1. Did the Court fail to draw reasonable inferences in favor of the non-moving party by concluding that [Waite's] inability after the fact to remember where he was looking when he fell necessarily means that he was not exercising the care of a reasonable person to avoid falling over the dangerous step?
>
> 2. Did the Court fail to draw reasonable inferences in favor of the non-moving party

> from the circumstantial evidence including witness testimony and the content and analysis in [Waite's] expert report?

Waite's brief at 7.

> A trial court may dismiss an action pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure governing summary judgment: After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. 1035.2. A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a **prima facie** cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa.R.C.P. 1035.2 *Note*. Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action. **Id.** If the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. The non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party. As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence

> of a triable issue. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate Court applies the same standard for summary judgment as the trial court.

***Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.***, 828 A.2d 1114, 1115-1116 (Pa.Super. 2003), quoting ***Grandelli v. Methodist Hosp.,*** 777 A.2d 1138, 1143-1144 (Pa.Super. 2001) (citation omitted).

> The trial court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him the benefit of all reasonable inferences to be drawn therefrom. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

***Goldberg v. Delta Tau Delta***, 613 A.2d 1250, 1252 (Pa.Super. 1992), ***appeal denied***, 626 A.2d 1158 (Pa. 1993) (citations omitted).

"The standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee." ***Emge v. Hagosky***, 712 A.2d 315, 317 (Pa.Super. 1998) (citation omitted). In the instant case, it is conceded that Waite was a business invitee. "The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against

those which might be discovered with reasonable care." ***Id.***, citing ***Crotty v. Reading Indus.***, 345 A.2d 259 (Pa.Super. 1975).

> Possessors of land owe a duty to protect invitees from foreseeable harm. With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he, (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

***Carrender v. Fitterer***, 469 A.2d 120, 123 (Pa. 1983), quoting Restatement (Second) of Torts § 343 (1965).

> The principle of law from which this rule of the Restatement was derived is that a possessor of land is not an insurer of the safety of those on his premises. As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular from his duty of reasonable care under the existing circumstances. Logically, the invitees [sic] case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition.

***Moultrey v. Great A & P Tea Co.***, 422 A.2d 593, 595-596 (Pa.Super. 1980) (citations omitted).

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."  Restatement (Second) of Torts § 343(A), cited with approval in *Carrender* [], 469 A.2d [at] 123 [].  *See also Hughes v. Seven Springs Farm, Inc.*, [] 762 A.2d 339 ([Pa.] 2000) (a possessor of land owes an invitee no duty to protect against obvious and avoidable dangers).

*Cresswell v. End*, 831 A.2d 673, 678 n.3 (Pa.Super. 2003).

According to the trial court, Waite failed to establish that the step caused his fall.  Examining all the evidence in the light most favorable to Waite, as the non-moving party, together with all reasonable inferences deducible therefrom, we must disagree.  Waite acknowledged that he did not know why he fell.  (Waite deposition, 11/19/13 at 19.)  He did not remember seeing a step.  (*Id.* at 20.)  He remembers falling face-first and being helped up by Hughes.  (*Id.* at 19, 42.)  However, he did not know whether he tripped or slipped on something.  (*Id.* at 42.)  He was not aware of the existence of the step prior to his fall.  (*Id.*)

Hughes testified that he was looking out the front window of the tattoo parlor when he saw Waite fall.  (Hughes deposition, 11/19/13 at 23-24.)  He testified that Waite fell face-first, with his feet flying up in the air.  (*Id.* at 46.)  Waite's glasses were lying on the ground and there was a puddle of blood, about ten inches in diameter.  (*Id.* at 24-25.)  Hughes helped Waite into the tattoo parlor, and another employee called an ambulance.  (*Id.* at

24, 28-29.) Hughes assumed that Waite fell because of the step. (***Id.*** at 50.)

We determine that this evidence was sufficient for a jury to reasonably infer that Waite fell because of the single step in front of the tattoo parlor. Waite fell face-first, in violent fashion, in that immediate area. In fact, Hughes testified that at first he thought it was "just somebody clowning around." (***Id.*** at 46.) When Waite fell, his feet were about three feet up in the air. (***Id.*** at 49.) It would be reasonable for a jury to infer that the single step was the cause of Waite's fall.

The trial court states that, "In this case, the expert, who did not witness the fall, has opined that [Waite] may have tripped or fell off the step. Those are two different but equal possibilities and the preponderance of the evidence burden can therefore not be met." (Opinion and Order, 9/29/15 at 3.) The trial court takes Mr. Dinoff's statement out of context. Mr. Dinoff's expert report reads, in relevant part,

> Slipping typically results in forward motion of the slipping foot and rearward rotation of the upper body. Waite's forward fall demonstrates he did not slip. His fall is consistent with his having either tripped or stepped over an unexpected drop in level. Except for the single step down, the sidewalk area on which Waite fell was planar and stable and effectively level. There were no other conditions likely to have caused a trip, and it is reasonably certain that the step was the cause of his fall.
>
> Waite fell because there was an unmarked single riser step down in the sidewalk along the front of the building. An unmarked step in a sidewalk is

> an unusual condition. Single steps that lack features to make them conspicuous have been identified as dangerous and as causes of pedestrian falls.
>
> The failures of the property owner to have constructed a sidewalk without a step, to have eliminated the step, or at a minimum to have provided effective warnings to make the step conspicuous made the sidewalk dangerous in a manner that caused Waite to fall.

Dinoff's report, 7/30/14 at 2-3.

Mr. Dinoff's report did not set out "two different but equal possibilities." Whether Waite tripped or fell off the step, Mr. Dinoff's report is clear that in his expert opinion, the single riser step caused Waite to fall. Whether he tripped or stepped over it is a meaningless distinction. The crux of the report is that the unmarked single riser step was the cause of Waite's fall. In addition, Mr. Dinoff's conclusion is corroborated by the eyewitness testimony of Hughes.

Relying on *Rogers v. Max Azen, Inc.*, 16 A.2d 529 (Pa. 1940), the trial court concluded that, even if the step did in fact cause Waite to fall, the step was an open and obvious feature of the property of which Waite should have reasonably been aware. (Opinion and Order, 9/29/15 at 2-3.) The trial court found that Waite was not exercising reasonable care to avoid falling on the step. (*Id.*) The trial court's reliance on *Rogers* is misplaced.

In *Rogers*, the plaintiff was a customer in a Pittsburgh fur store. *Rogers*, 16 A.2d at 530. She was proceeding up a flight of stairs to the second floor of the establishment, when she tripped and fell on the bottom

of an ornamental protective banister. *Id.* As the *Rogers* court described

the incident,

> As [the plaintiff] turned right at the head of the stairway, which entered the second floor sales room through a rectangular opening in the floor, guarded on three sides by an ornamental protective banister, she stumbled or tripped, as she testified, over the end of a half-inch high base or shoe by means of which the banister was anchored to the floor and upon which it rested.

*Id.* The plaintiff prevailed at trial and was awarded damages of $3,250. *Id.*

The defendant appealed, arguing that the plaintiff failed to prove negligence,

and also that she was contributorily negligent. *Id.*

The Pennsylvania Supreme Court agreed, holding that by her own

testimony, the plaintiff had failed to use ordinary care for her own safety:

> Should it be conceded, however, that the construction of the railing was such that it could with propriety be regarded as involving an unreasonable risk of harm to appellant's invitees, we would nevertheless be required to hold that no issue for the jury was presented, for the reason that appellee's own testimony plainly shows that negligence on her part contributed to such an extent in bringing about the injury of which she complains as to bar recovery by her therefor as a matter of law.

*Id.* at 531. At trial, the plaintiff conceded that she was not looking where

she was going and that the base of the banister railing was plainly visible.

*Id.* The *Rogers* court held that this testimony barred recovery:

> Disclosing, as it does, thoughtless inattention to her surroundings and a complete failure to be duly observant of where she was stepping, this testimony leaves no room for speculation as to the sole cause

> of appellee's injuries. It brings the case within the rule that where one is injured as the result of a failure on his part to observe and avoid an obvious condition which ordinary care for his own safety would have disclosed, he will not be heard to complain.

*Id.* (citations omitted).

We find **Rogers** to be readily distinguishable. In **Rogers**, the plaintiff conceded that she was not paying attention to where she was going and that the base of the banister railing was plainly visible. Instantly, Waite testified that he could not remember where he was looking immediately before his fall. (Waite deposition, 11/19/13 at 20.) Furthermore, Waite presented photographs and expert testimony that the step was not plainly visible; to the contrary, Mr. Dinoff opined that single riser steps are inherently dangerous and, at a minimum, should be well marked with obvious visual cues such as warning signs or a contrast in surface colors. With regard to the step at issue here, Mr. Dinoff found that, "The sidewalks on both sides of the step were similar light-colored concrete. There were no handrails, painted lines, signs or markings to delineate the step." (Dinoff report, 7/30/14 at 2.) By contrast, in **Rogers**, the plaintiff encountered a protective railing which, it was reasonable to assume, was anchored to the floor at some point. Here, there was nothing to alert pedestrians to the single riser step.

The trial court found that the photographs of the step show that it was an obvious feature of the property. (Opinion and Order, 9/29/15 at 3.)

After reviewing the same color photographs in the certified record, this court must respectfully disagree with the trial court's conclusion.[1] Rather, the photographs support Mr. Dinoff's opinion that the single riser step was inconspicuous and unmarked and presented a hazardous condition.

We also note, as does Waite in his brief on appeal, that when **Rogers** was decided in 1940, the plaintiff's contributory negligence barred any recovery. The doctrine of contributory negligence protected defendants from tort claims if the plaintiff was found to be negligent to any degree. In 1976, Pennsylvania adopted the Comparative Negligence Act, under which a plaintiff guilty of contributory negligence is not barred from recovery so long as his negligence does not exceed that of the defendants. **See Marks v. Redner's Warehouse Markets**, ___ A.3d ___, 2016 WL 639043 at *3 (Pa.Super. February 17, 2016) (citation omitted).

For these reasons, we determine the trial court erred in granting summary judgment for Argento. Waite presented sufficient circumstantial evidence of negligence to present a jury question.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[1] We note that on summary judgment our scope of review is plenary and we are not bound by the trial court's legal conclusions, including that the step

J. A09008/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016

---

was an open and obvious condition of the property of which an invitee should have been aware. **Biernacki**, **supra**.

- 14 -