J-A26019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| JEFFREY MOSER, KATHY MARIE HUFF, ADMIN. OF THE ESTATE OF MELISSA ANN HUFF, DECEASED, ACUMEN CONTRACTING, INC., PETE VITI | : : : : : : : | No. 589 MDA 2017 |
| Appellants | : : | |
| TAVERNA, INC., TOM KALATHAS, NICK KALATHAS, LASHAY KALATHAS AND NATHANIEL E. WILT | : : | |

Appeal from the Order Entered March 1, 2017
In the Court of Common Pleas of Adams County Civil Division at No(s):
14-SU-1175

BEFORE: BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY OLSON, J.: **FILED MAY 07, 2018**

Appellants, Acumen Contracting, Inc. (Acumen) and Pete Viti (Viti), appeal from the order entered on March 1, 2017 granting summary judgment in favor of State Auto Property and Casualty Insurance Company (State Auto) in this declaratory judgment action. We reverse.

The relevant facts and procedural history are as follows.[1] On November 21, 2013, Jeffrey Moser (Moser) was operating a truck owned by Acumen on Fairfield Road in Carroll Valley Borough, Adams County, Pennsylvania. At approximately 7:00 p.m., Moser struck Melissa Ann Huff (Huff) as she was attempting to load a deer carcass into her vehicle. Huff died from injuries sustained in the accident.

Moser worked as an independent contractor of Acumen.[2] At the time of the accident, he had completed work for the day but was driving the truck on a personal errand without permission from Acumen or Viti. Moser used the Acumen vehicle to perform his work duties and retained it at his Pennsylvania residence when it was not in use for business purposes. Moser, however, did not have permission to drive the vehicle. Acumen hired Coty Head (Head) to drive Moser from the Pennsylvania home they shared to Acumen jobsites. Head also assisted Moser in his work for Acumen.

At the time of the accident, Acumen and the truck were insured by a business auto policy issued by State Auto. That policy had a liability limit of $1,000,000.00. Acumen was also covered by a commercial umbrella insurance policy issued by State Auto providing an additional $1,000,000.00

---

[1] The parties are in agreement concerning the factual and procedural background of this matter.

[2] Acumen is a Maryland corporation owned by Viti, a Maryland resident. The truck operated by Moser is registered in Maryland and Acumen conducts its business in that state.

of coverage at the time of the accident. Neither policy excluded coverage for punitive damages.

Huff's estate commenced an action in Adams County to recover damages arising out of the November 21, 2013 motor vehicle accident. Moser, Acumen, and Viti were defendants in that case. State Auto filed this related declaratory judgment action seeking, among other things, a determination that it did not owe coverage to Acumen or Viti for punitive damage claims asserted by Huff's estate.

After the close of discovery, State Auto moved for summary judgment, which the trial court granted. The court held that Acumen and Viti were not entitled to coverage under the State Auto policies for any punitive damage claims asserted by Huff's estate.

When the trial court refused to reconsider its summary judgment order prior to the expiration of the appeal period, Acumen and Viti filed a notice of appeal challenging the court's determination that State Auto owed no coverage for the punitive damages claims made against them. The parties and the trial court have complied with Pa.R.A.P. 1925.[3]

Appellants raise the following claims in their brief.

> In that the [trial c]ourt should have found that Maryland law governs the interpretation of and obligations under the subject

---

[3] In its Rule 1925(a) opinion, the trial court agrees with Appellants that its March 1, 2017 summary judgment order was in error and should be vacated. **See** Trial Court Opinion, 5/25/17, at 1-2.

insurance policy and that the law of Maryland permits coverage for punitive damages, the [c]ourt erred in granting [s]ummary [j]udgment to [State Auto], to the extent that the [s]ummary [j]udgment determined that [Acumen] and [Viti] are not entitled to coverage under the applicable [State Auto] polic[ies] for the punitive damages claims made against them in this matter?

Since insurance coverage for punitive damages claims based [on] vicarious liability are not against the public policy of Pennsylvania, the [trial c]ourt erred in granting [State Auto's] [m]otion for [s]ummary [j]udgment to the extent that the [order] determined that [Acumen] and [Viti] are not entitled to coverage under the applicable [State Auto] polic[ies] for the punitive damages claims made against them in this matter.

Appellants' Brief at 5-6.

Appellants argue in their first claim that the trial court erred in refusing to apply Maryland law, which permits insurance coverage for punitive damage claims brought against an insured. *See First National Bank of St. Mary's v. Fidelity & Deposit Co.*, 389 A.2d 359, 367 (Md. 1978). In the alternative, Appellants' second claim contends that summary judgment was improper, even if Pennsylvania law applies, since the law of this Commonwealth allows insurance coverage for punitive damages based upon vicarious, but not direct, liability. *Butterfield v. Giuntoli*, 670 A.2d 646, 655 (Pa. Super. 1996), *appeal denied*, 683 A.2d 875 (Pa. 1996). As these claims are interrelated, we address them in a single discussion.

[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as

- 4 -

to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

* * *

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Criswell v. Atlantic Richfield Co.*, 115 A.3d 906, 908-909 (Pa. Super. 2015), *quoting*, *Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797-798 (2012).

Initially, Appellants assert that the trial court should have applied Maryland law in adjudicating the substantive rights of the parties. A dispute concerning the applicable substantive law requires a choice of law analysis.

*Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. 2005).

In addressing which substantive law to apply, we employ the conflict-of-law principles that our [Supreme] Court framed in *Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964). In *Griffith*, our Supreme Court altered its approach in determining which substantive law to apply in tort cases. Prior to that decision, Pennsylvania followed the *lex loci delicti* rule, which applied the substantive law of the place where the tort was committed. *Id.* at 801. However, the [Supreme] Court abandoned that mechanical approach in favor of a methodology that combined the "government interest" analysis and the "significant relationship" approach of sections 145 and 146 of the Restatement (Second) of Conflicts[.] *Id.* at 801–06; *Troxel v. A.I. duPont Inst.*, 636 A.2d 1179, 1180–1181 (Pa. Super. 1994).

***

- 5 -

Section 145(2) of the Restatement (Second) of Conflicts sets forth the contacts to be considered in applying the analysis required under *Griffith*. They include:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1983).

We evaluate these four factors mindful of the overarching choice-of-law principles enumerated in § 6 of the Restatement (Second). Those considerations include the following:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of the other interested states and the relevant interests of those states in determination of a particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

*Id*. § 6.

Moreover, [] § 146 of the Restatement (Second) establishes a presumption in personal injury cases that favors the application of the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties. That section provides:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and

liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id*. § 146.

The first step in our analysis is to decide whether there is a true conflict[.] *Cipolla v. Shaposka*, 267 A.2d 854, 855–856 (Pa. 1970). A true conflict occurs where an analysis of the policies underlying each of the conflicting laws reveals that, in each case, application of the respective state's law would further its corresponding policy. *Id*. at 855. If a true conflict exists, we then proceed to determine which jurisdiction has the greater interests, considering the qualitative contacts of the states, the parties and the controversy. *Cipolla*, *supra* at 856.

*Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 987-988 (Pa. Super. 2016) (footnotes and parallel citations omitted).

We first consider whether a true conflict exists between Pennsylvania and Maryland law.[4] Maryland law holds that insurance coverage for punitive

---

[4] The central question in State Auto's declaratory judgment action revolves around the scope of the insurer's coverage obligation towards its insureds, Acumen and Viti. This issue implicates a contract law choice of law analysis, rather than a tort law choice of law analysis. *See McDonald v. Whitewater Challenges, Inc.,* 116 A.3d 99, 105-111 (Pa. Super. 2015) ("in a contract action involving an underlying tort and in which an insurance policy is at issue, the court will apply a contract law – and not a tort law – choice of law framework"). For choice of law purposes, however, the analysis is essentially the same for contract and tort actions and focuses on the significance of the state contacts and the respective interests of the competing states. Our prior cases agree that the flexible choice of law approach adopted in *Griffith*, which looks at the significance of state contacts, policies, and interests underlying a particular issue, governs choice of law determinations in both contract and tort law cases. *See Nationwide Mut. Ins. Co. v Walter*, 434 A.2d 164, 136-137 (Pa. Super. 1981) (flexible

*(Footnote Continued Next Page)*

damage claims, whether arising from direct or vicarious liability, is not a violation of the public policy of Maryland. **See First National Bank of St.**, 389 A.2d at 367. Under Pennsylvania law, however, insurance coverage for punitive damages is limited to claims arising from vicarious liability; coverage for punitive damage claims arising from direct liability is forbidden as against public policy. **See Butterfield**, 670 A.2d at 655. Huff's estate asserted punitive damage claims against Acumen and Viti on the basis of both direct and vicarious liability. Therefore, because application of either Maryland or Pennsylvania law would further the respective states' divergent policies, a true conflict exists.

"Having found a true conflict of law, we next [decide] which state has the most significant relationship to the parties and the occurrence in order to determine which jurisdiction's substantive law applies." **Marks**, 136 A.3d at 989. The relevant inquiry is "the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and

_(Footnote Continued)_ ———————————

conflicts methodology adopted in **Griffith** will apply in contract actions) (quotation omitted); **McCabe v. Prudential Prop. And Cas. Ins. Co.**, 514 A.2d 582, 586 (Pa. Super. 1986) (interest analysis applies in contract action to determine coverage under automobile insurance policy); **McDonald**, 116 A.3d at 105-111 (considering which state, New York or Pennsylvania, had the greatest interest in application of its laws based upon the policies and interests underlying the particular issue before the court). Thus, whether one views this matter as a "tort" case or a "contract" case, the choice of law analysis considers the same factors as the test originally announced in **Griffith**.

relevance to the matter in dispute, a priority of interest in the application of its rule of law." *Id.*

We briefly review the case law relevant to this question. *Griffith* is the landmark case in which the Pennsylvania Supreme Court abolished the conflicts rule of *lex loci delecti* (the location of the accident) and adopted an interest/contacts analysis. *Griffith* involved a plane crash that occurred in Colorado. The Court, in choosing which state law to apply, observed that the location of the plane crash was a mere fortuity and that the law of the state with the greatest interest should apply. Hence, the Court adopted the more flexible approach set forth in the Restatement (Second) of Conflicts and detailed above.

Years later, this Court held in *Walter* that the interest/contacts analysis formulated in *Griffith* should apply in contract cases. *See Walter*, 434 A.2d at 167. *Walter* involved a New Jersey resident who owned a car registered in New Jersey and insured under a New Jersey policy to satisfy New Jersey's vehicular insurance requirements. After finding no success in selling the vehicle from his home, the New Jersey resident took the car to a used car lot in Pennsylvania and entered a consignment sale arrangement. The New Jersey resident signed his title over in blank and gave his registration card to the dealer. After several months, a potential buyer took the car for a test drive and sustained injuries in a collision. At issue in the case was the enforceability of a policy exclusion for sales

agencies (*i.e.* a "garageman" exclusion), which Pennsylvania law allowed but New Jersey law forbid.

This Court held that New Jersey law applied because that state had the most significant contacts with the insurance policy transaction. ***Id.*** We reasoned that the policy was issued in New Jersey, to a New Jersey resident, and for the purpose of satisfying New Jersey's motor vehicle insurance requirements. ***Id.*** at 167-168. We further explained that the New Jersey resident had the right to expect that his policy would conform to New Jersey law (which, in fact, it did not since the policy included an exclusion that New Jersey law did not permit) and that New Jersey law would apply to its interpretation. ***Id.*** at 168 ("No matter where [the New Jersey resident] drove his car or gave consent to others to operate his vehicle, he had the right to expect that his policy conformed to New Jersey law and that the laws of New Jersey would apply in interpreting the policy. Pennsylvania had no contact with the transaction involving the insurance policy. It was by mere happenstance that the automobile was involved in an accident while located in Pennsylvania."). We observed that Pennsylvania had only a diminished interest in the construction of the policy since it had no contact

with the policy transaction and the location of the accident was a mere happenstance.[5] *Id.*

*McCabe* is another case that considered issues similar to those presently before us. There, a Connecticut resident was operating his Connecticut-registered and insured car in Pennsylvania when he struck a pedestrian in Pennsylvania. In the ensuing litigation, a dispute arose as to

---

[5] We note some reservation about the thoroughness of our decision in *Walter*. Our opinion in that case did not consider that the New Jersey resident relocated his car to Pennsylvania on a relatively permanent basis so that it could be sold. We also did not consider the transfer of a blank title and registration card to the Pennsylvania car dealer. Given these factors, the operation of the vehicle within Pennsylvania was virtually inevitable, so an accident was readily foreseeable. *Walter*'s observation that the location of the accident was a mere fortuity is not entirely supported by the facts.

Here, too, the issue of nearly permanent relocation of a non-Pennsylvania registered and insured vehicle is present. While the facts show that the vehicle at issue was registered in Maryland, owned by a Maryland corporation, and insured by a policy issued in Maryland, the record also establishes that the vehicle owner permitted essentially permanent storage in Pennsylvania and regular use by Pennsylvania residents. Under these circumstances, from which we may infer the inevitability of frequent Pennsylvania travel and the related possibility of a motor vehicle accident within Pennsylvania, Maryland would seem to have a diminished interest in applying its public policy on insurance coverage and Appellants' reliance on Maryland insurance law would be subject to question. Nevertheless, we are bound by *Walter*'s holding that the state of issuance possesses the most vital contacts because an insured has the right to expect that the laws of the issuing state will apply in interpreting the policy *See State Farm Fire & Cas. Co. v. Craley*, 844 A.2d 573, 575 (Pa. Super. 2004) ("[W]e are bound by decisions of other panels of this Court until an *en banc* panel of this Court, the legislature, or the Supreme Court decides otherwise.").

- 11 -

whether Connecticut or Pennsylvania no fault insurance applied. We held that, based on the analysis in **Walter**, Connecticut law should apply.[6]

Because Maryland is the state of issuance for the applicable insurance policies, we hold that Maryland law applies for purposes of ascertaining the rights of the parties in this declaratory judgment action. **See Walter supra** and **McCabe supra.** Moreover, since Maryland law holds that insurance coverage for punitive damages arising from both vicarious and direct liability does not offend public policy, Appellants were entitled to a declaration that coverage for punitive damages was available to them in this action. Thus, the trial court erred in granting summary judgment in favor of State Auto.

Judgment reversed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/7/2018

---

[6] **McCabe**, unlike **Walter** and the present case, did not present issues of permanent relocation of a vehicle to Pennsylvania.