2023 PA Super 85

| | | |
|---|---|---|
| JORDAN BUDAI, ANDREA SCIOLA, AND ASHLEY GENNOCK, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| COUNTRY FAIR, INC. | : : : | No. 461 WDA 2022 |
| Appellant | : | |

Appeal from the Order Entered August 20, 2020
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  10896 OF 2019

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.*

OPINION BY BOWES, J.:                    **FILED:  May 17, 2023**

Country Fair, Inc. ("Country Fair") appeals from the order entered on August 20, 2020, determining that Jordan Budai, Andrea Sciola, and Ashley Gennock, individually and on behalf of all other similarly situated ("Plaintiffs"), had standing to assert a cause of action based on Country Fair's violation of the federal Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g).[1]  We reverse the order and dismiss Plaintiffs' complaint.

By way of background, Congress enacted FACTA in 2003, as an amendment to the Fair Credit Reporting Act, to prevent identity theft.  ***See***

---

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court certified the order for interlocutory appeal pursuant to 42 Pa.C.S. § 702(b).

***Kamal v. J. Crew Grp., Inc.***, 918 F.3d 102, 106 (3d Cir. 2019).[2]  To achieve

this, FACTA requires, in relevant part, that debit and credit card numbers be

truncated on printed receipts, as follows:

> **(g) Truncation of credit card and debit card numbers**
>
> > **(1) In general**
> >
> > Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.
> >
> > **(2) Limitation**
> >
> > This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g).  FACTA provides that "[a]ny person who is negligent in

failing to comply with any requirement imposed under this subchapter with

respect to any consumer is liable to that consumer in an amount equal to the

sum of (1) any actual damages sustained by the consumer as a result of the

failure" as well as (2) the costs and attorney fees for the successful action.

***See*** 15 U.S.C. § 1681o(a).  To remedy willful violations, FACTA provides for

---

[2] We note that decisions from the Third Circuit Court of Appeals, whether interpreting federal or state law, do not bind our Courts.  ***See Martin v. Hale Prod., Inc.***, 699 A.2d 1283, 1287 (Pa.Super. 1997).  Rather, "[d]ecisions of the federal courts lower than the United States Supreme Court possess a persuasive authority." ***Id***. (cleaned up).  We consider the federal cases cited herein accordingly.

actual damages or statutory damages, plus punitive damages and attorneys' fees. **See** 15 U.S.C. § 1681n(a).

Between July 28 and July 30, 2017, Plaintiffs patronized Country Fair retail stores and made purchases with their debit or credit cards. Each time the Plaintiffs received a paper receipt, it displayed the first four and the last four digits of the credit or debit cards used for payment. Plaintiffs filed a class action federal suit against Country Fair, alleging that Country Fair had willfully violated FACTA. Plaintiffs did not allege that the violation resulted in their identities being stolen or their card numbers being misappropriated. They did, however, claim that storing the offending receipts to prevent identity theft by a third party who might happen across the discarded receipts was burdensome. The District Court, applying the holding in **Kamal**, **supra** at 117, that "a bare procedural violation. . . does not create Article III standing[,]" dismissed Plaintiffs' complaint. **See Budai v. Country Fair, Inc.**, Civ. A. No. 18-1120 (W.D.Pa. Aug. 21, 2019).

Thereafter, Plaintiffs transferred the complaint to state court pursuant to 42 Pa.C.S. § 5103. Country Fair filed preliminary objections alleging that Plaintiffs lacked standing and failed to allege facts sufficient to establish a willful violation of FACTA. The trial court concluded that Plaintiffs had statutory standing under FACTA, such that they did not need to invoke the traditional principles of standing under Pennsylvania law, and that they had sufficiently averred a willful violation of FACTA.

Country Fair filed a motion for reconsideration, which the trial court granted. Upon second review, the court once again overruled Country Fair's preliminary objections, but this time for different reasons. To wit, the trial court reversed its earlier decision, holding instead that FACTA **did not** confer statutory standing. It further concluded that the Third Circuit's holding in *Kamal* regarding Article III standing in FACTA cases was not compelling since Pennsylvania does not adhere to Article III's concrete-injury requirement. Rather, applying Pennsylvania's traditional standing principles to the above facts, the trial court concluded that Plaintiffs had standing. *See* Trial Court Opinion, 8/20/20, at 8.

This timely appeal followed.[3] Country Fair presents the following issues for our consideration:

1. Whether Plaintiffs – whose one-count complaint alleging a technical violation of [FACTA], was dismissed by the United States District Court for the Western District of Pennsylvania for lack of standing – have standing to pursue that claim under Pennsylvania law?

2. Whether Pennsylvania law allows Plaintiffs to obtain a different result in their federal claim and survive dismissal by walking across the street from federal court to state court?

Country Fair's brief at 5.

_____

[3] Although this Court initially denied Country Fair's petition for permission to appeal, we subsequently granted the petition following the filing of a motion for reconsideration. We note that the trial court did not order Country Fair to file a concise statement pursuant to Pa.R.A.P. 1925(b), and the trial court did not submit a Rule 1925(a) opinion.

We begin with Country's Fair's first issue, noting that we review orders overruling preliminary objections "to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Am. Interior Constr. & Blinds Inc. v. Benjamin's Desk, LLC*, 206 A.3d 509, 512 (Pa.Super. 2019) (cleaned up). Standing presents a question of law, "thus, our standard of review is *de novo* and our scope of review is plenary." *S.G. v. J.M.G.*, 186 A.3d 995, 997 (Pa.Super. 2018) (cleaned up).

A party filing suit in a Pennsylvania court "'must establish as a threshold matter that he has standing to maintain the action.'" *Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)). "Unlike the federal courts, which derive their standing requirements from Article III of the United States Constitution, standing for Pennsylvania litigants has been created judicially."[4] *Id*. (citation omitted).

Specifically, in Pennsylvania there are two avenues for a litigant to establish standing: (1) by statute, which expressly prescribes the individuals

---

[4] In the federal context, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Accordingly, the Third Circuit has found that a purely technical violation of FACTA, without further injury by way of, *inter alia*, identity theft, does not confer Article III standing. *See Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 117 (3d Cir. 2019) (holding that "absent a sufficient degree of risk, J. Crew's alleged violation of FACTA is a bare procedural violation that does not create Article III standing" (cleaned up)).

who have standing to pursue a particular action thereunder; or (2) in the absence of such a statutory prescription, by satisfying the requirements of Pennsylvania's traditional standing doctrine. **See Milby v. Pote**, 189 A.3d 1065, 1076–77 (Pa.Super. 2018) ("These traditional standing requirements apply only when a specific statutory provision for standing is lacking.").[5]

We begin with an overview of statutory standing. "[W]here the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles." **Int. of K.N.L.**, 284 A.3d 121, 136-37 (Pa. 2022) (citations omitted). In these circumstances, "the question involved is whether the interest the plaintiff seeks to protect is arguably within the zone of interests to be protected by the statute. Accordingly, the answer to any question concerning statutory standing involves a careful analysis of the relevant statutory scheme." **Milby**, **supra** at 1077 (cleaned up). For example, the Child Custody Act expressly prescribes who may pursue an action thereunder. **See** 23 Pa.C.S. §§ 5324 ("Standing for any form of physical custody or legal custody"), 5325 ("Standing for partial physical custody and supervised physical custody").

---

[5] Insofar as Country Fair assails this jurisprudence because "the Pennsylvania Supreme Court has never issued such a ruling," Country Fair's reply brief at 6, we remind Country Fair that this Court is bound by our prior published decisions. **See Czimmer v. Janssen Pharms., Inc.**, 122 A.3d 1043, 1064 n.19 (Pa.Super. 2015) (recognizing "that it is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court" (cleaned up)).

In the absence of a statutory prescription, our traditional standing doctrine applies, which "is a judicially-created tool intended to 'winnow out' litigants with no direct interest in the matter, and to otherwise protect against improper parties." **Int. of K.N.L.**, **supra** at 136 (citation omitted). As our Supreme Court recently explained:

> The "core concept" of standing is that the litigant must be "adversely affected" in some way. Under this Court's precedent, the prerequisites to standing are satisfied where the complaining party's interest is substantial, direct, and immediate, meaning that the party's interest surpasses that of the general public in procuring obedience to the law, the harm alleged was caused by the matter complained of, and the harm is not remote and speculative.

**Trust Under Will of Ashton**, 260 A.3d 81, 88 (Pa. 2021) (cleaned up). "In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." **Wm. Penn Parking Garage, Inc. v. City of Pittsburgh**, 346 A.2d 269, 280-81 (Pa. 1975) (cleaned up). Moreover, "[t]he doctrine of standing stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." **Firearm Owners Against Crime v. Papenfuse**, 261 A.3d 467, 481 (Pa. 2021) (cleaned up).

As noted hereinabove, the trial court in the case *sub judice* determined that FACTA did not confer statutory standing but that Plaintiffs had nonetheless established standing pursuant to Pennsylvania's traditional standing doctrine. **See** Trial Court Opinion, 8/20/20, at 8.

- 7 -

Country Fair argues that "Congress never created a statutory right to sue in state court based on a technical violation of FACTA that does not implicate any harm" and that Plaintiffs cannot satisfy Pennsylvania's traditional tripartite test because they have not "suffer[ed] a concrete injury that is actual or imminent." Country Fair's brief at 22-23. Plaintiffs, on the other hand, allege that the trial court correctly concluded they had established standing pursuant to Pennsylvania law. *See* Plaintiffs' brief at 20. However, they contend that the court erred in finding that they lacked statutory standing. *Id*. According to Plaintiffs, they "have standing to bring their FACTA claims because the statute specifically vested in them a right to receive a properly truncated receipt, and the law authorizes their cause of action to sue Country Fair for its violation of that right." *Id*. at 24. Thus, they argue that "[g]iven [Plaintiffs'] clear qualification to bring a FACTA claim against Country Fair, and Pennsylvania courts' clear concurrent jurisdiction to hear FACTA claims, this Court should rule that [Plaintiffs] have statutory standing, and affirm the trial court's order on that alternative basis." *Id*. at 26. If this Court is not so inclined, Plaintiffs urge us to affirm based upon the trial court's conclusion that they satisfied Pennsylvania's traditional three-part test for standing. *See id*. at 27.

We disagree with Plaintiffs' contention that FACTA conferred upon them statutory standing. Notably absent from FACTA is a provision, like those in the Child Custody Act, delineating who has standing to pursue an action

thereunder.[6] Thus, while FACTA includes liability provisions that create private rights of action, there is no standing provision that "expressly prescribes the parties who may pursue a [FACTA] action in Pennsylvania courts[.]" *Int. of K.N.L.*, *supra* at 136 (citation omitted). A statute setting forth a private right of action does not automatically confer standing. *See Jackson v. Garland*, 622 A.2d 969, 971 (Pa.Super. 1993) ("The law of standing provides that one cannot invoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy."). As FACTA contains no standing provision, Plaintiffs may not invoke statutory standing to pursue their action in state court. Lacking statutory standing, Pennsylvania's traditional standing doctrine applies.

In finding that Plaintiffs satisfied the traditional tripartite test, the trial court held as follows: (1) "Plaintiffs' interest far outstrips that of ordinary citizens in procuring obedience to the law, because it was Plaintiffs' personal information that was printed on the offending receipts[;]" (2) "there is a causal relationship between [Country Fair's] conduct and the harm to Plaintiffs' rights to enjoy the protections of FACTA" as a result of Country Fair printing receipts in violation of FACTA; and (3) "the causal connection has already occurred,

---

[6] *Cf. also*, *e.g.*, 13 Pa.C.S. § 2A531 ("Standing to sue third parties for injury to goods"), 53 P.S. § 11701.202 ("The following have standing to request a determination of municipal financial distress from the secretary. . . .").

and was complete when [Country Fair] tendered the allegedly illegal receipts to Plaintiffs[.]" Trial Court Opinion, 8/20/20, at 23. "Simply put, [Country Fair], by its lack of compliance with FACTA, caused the alleged harm to Plaintiffs' interests, and this cause-effect connection is neither too remote nor too speculative to escape adjudication in our courts." *Id*. at 24.

The trial court's conclusion amounts to a finding that the mere printing of a receipt in violation of FACTA, regardless of the severity of the violation, *per se* aggrieves a customer. We cannot countenance such a conclusion. While not binding, we find the analysis of the Third Circuit in *Kamal*, *supra*, particularly pertinent to whether Plaintiffs were aggrieved pursuant to Pennsylvania's traditional standing doctrine.

By way of background, Kamal received three receipts from J. Crew, all of which included the first six and the last four digits of his credit card number. As a result of this alleged willful violation of FACTA, Kamal filed a federal class action suit. The District Court dismissed Kamal's complaint "because Kamal had alleged only a technical violation of FACTA and not a concrete injury[.]" *Id*. at 109.

The Third Circuit reiterated that Article III standing requires, *inter alia*, an injury in fact. "To show injury in fact, a plaintiff must allege an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. The injury must be concrete in both a qualitative and temporal sense, and an abstract injury will not suffice." *Id*. at 110 (cleaned up). Similarly, it recounted the United States Supreme

- 10 -

Court's holding "that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 110-11 (cleaned up). Further, the ***Kamal*** Court recalled the Supreme Court's warning that "Congress cannot statutorily manufacture Article III standing in the case of a bare procedural violation, divorced from any concrete harm. Rather, a procedural violation must yield or risk actual harm to meet the requirements of Article III." *Id*. at 111 (cleaned up).

In sum, the Third Circuit interpreted the Supreme Court's precedent as follows: "an alleged procedural violation manifests concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest. If the violation does not present a material risk of harm to that underlying interest, however, a plaintiff fails to demonstrate concrete injury." *Id*. at 112-13 (cleaned up).

Kamal alleged two injuries: the printing of the receipt in violation of FACTA and the increased risk of identity theft as a result of the printing. The Third Circuit held that "the procedural violation is not itself an injury in fact, and Kamal has not otherwise alleged a risk of harm that satisfies the requirement of concreteness." *Id*. at 113.

> Based on the plain text of FACTA, which requires truncation of all but the last five digits of a consumer's credit card number, we recognize Congress identified the violation alleged here. By creating a private right of action to enforce FACTA's provisions and allowing for statutory damages for willful violations, Congress has expressed an intent to make the injury redressable.

- 11 -

But the Clarification Act also expresses Congress's judgment that not all procedural violations of FACTA will amount to concrete harm. The congressional findings underlying the Act are directed to the risk incurred by printing the expiration date when the card number is properly truncated. Though expiration date truncation is not at issue here, Congress's action to limit FACTA liability to those claims implicating actual harm accords with our understanding of Article III.[7]

*Id*. (cleaned up).

Kamal argued that Congress had found "all conduct prohibited by FACTA creates a sufficient risk of identity theft." *Id*. at 115 (cleaned up). Noting that the cited congressional findings related only to instances where retailers printed the credit card number in full on receipts, the Third Circuit rejected Kamal's argument and considered whether he set forth sufficient facts to show a particular risk of harm. *Id*. at 115 n.5, 116. Ultimately, it agreed with the District Court as follows:

Kamal has alleged neither third-party access of his information, nor that the receipt included enough information to likely enable identity theft. Our analysis would be different if, for example,

_____

[7] By way of background, after FACTA's enactment "launched 'hundreds of lawsuits' based on receipts printed with expiration dates 'even where the account number was properly truncated,'" Congress passed the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"). *Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 633 (6th Cir. 2021) (quoting Clarification Act, Pub. L. No. 110-241 § 2(a)(4)-(5)). Since proper truncation, irrespective of the inclusion of an expiration date, was found to protect against identity theft, the Clarification Act amended 15 U.S.C. § 1681n to refine the meaning of "willful noncompliance" in relation to the inclusion of expiration dates on printed receipts. In doing so, Congress explained that the stated purpose of the Clarification Act was "to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Clarification Act § 2(b).

> Kamal had alleged that the receipt included all sixteen digits of his credit card number, making the potential for fraud significantly less conjectural. Here, however, we agree with the District Court that this speculative chain of events does not constitute a material risk of harm.

*Id*. at 116 (footnote omitted) (explaining the chain of events as: "Kamal loses or throws away the receipt, which is then discovered by a hypothetical third party, who then obtains the six remaining truncated digits along with any additional information required to use the card, such as the expiration date, security code or zip code" (cleaned up)).

Thus, the Third Circuit held that "absent a sufficient degree of risk, J. Crew's alleged violation of FACTA is a bare procedural violation that does not create Article III standing." *Id*. at 117 (cleaned up). It further found that "[t]his result falls within the Supreme Court's admonition that when Congress adopts procedures designed to decrease the risk of harm to a concrete interest, a violation of one of those procedural requirements may result in no harm." *Id*. (cleaned up).

We now return to the instant case. As in *Kamal*, Plaintiffs have "alleged neither third-party access of [the] information, nor that the receipt included enough information to likely enable identity theft." *Kamal*, *supra* at 116. All Plaintiffs have alleged is the same interest of all customers in receiving receipts in compliance with FACTA, namely, that they be properly truncated when printed. Plaintiffs' speculative chain of events that the receipts placed them at heightened risk for identity theft solely based on their existence

simply does not amount to an interest that is substantial, direct, and immediate, which our Supreme Court identified as the foundational components of standing. **See Ashton**, **supra** at 88. Nor does the alleged burden of storing or destroying the offending receipts. Stated simply, Country Fair's conduct has not adversely affected them.[8]

Based on the foregoing, the core concept of our standing doctrine has not been satisfied and the trial court erred in overruling Country Fair's preliminary objection as to standing. Since we conclude that Plaintiffs lack standing under Pennsylvania law, we reverse the order overruling Country Fair's preliminary objection and dismiss the complaint.[9] In light of our disposition, we decline to address Country Fair's second issue concerning the resurrection of Plaintiffs' federal claim in state court as any purported holding would be purely advisory.

Order reversed. Complaint dismissed.

---

[8] We observe that our holding aligns with Congress's intent that FACTA provide relief for consumers who suffer an "actual harm to their credit or identity[.]" Clarification Act § 2(b).

[9] We grant Plaintiffs' application for post-submission communication asking this Court to consider as a supplemental authority our Supreme Court's decision in **Int. of K.N.L.**, 284 A.3d 121 (Pa. 2022). **See** Plaintiffs' Application for Post-Submission Communication, 1/18/23.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/17/2023