J-A14016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LISA A. TROPEPE, INDVIDUALLY, AS EXECUTRIX OF THE ESTATE OF KEMP DANIEL SHALLOWAY, AND LISA A. TROPEPE, AS LEGAL GUARDIAN/PARENT OF GINA SHALLOWAY, A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 1948 EDA 2022 |
| AVCO CORPORATION, LYCOMING ENGINES, FLYERS, INC. AND MICHAEL SCOTT REIMAN | : : : : : | |
| APPEAL OF: AVCO CORPORATION AND LYCOMING ENGINES | : : | |

Appeal from the Orders Entered July 13, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 170802141

BEFORE: PANELLA, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 25, 2025**

Avco Corporation ("AVCO") and its unincorporated division, Lycoming Engines ("Lycoming") (collectively "Appellants"), take this appeal from the interlocutory orders granting the motion *in limine* filed by Plaintiff/Appellee, Lisa A. Tropepe ("Appellee"), individually, and as executrix of the estate of Kemp Daniel Shalloway ("Shalloway"), and legal guardian/parent of Gina Shalloway, a minor, and denying Appellants' cross-motion *in limine*. The

_____

[*] Former Justice specially assigned to the Superior Court.

narrow issue before us in this interlocutory appeal is whether the trial court erred in concluding Pennsylvania's products liability law, and not Florida's products liability law, which includes a statute of repose, would govern Appellee's products liability claims against Appellants at trial. We grant Appellants' petitions for permission to appeal and reverse the orders.

The factual and procedural history of this appeal is as follows. Shalloway was a resident of Florida, and Appellee remains a resident of Florida. *See* Third Am. Compl., 4/29/18, at ¶ 1; Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶¶ 50-51. In October 2015, Shalloway was piloting a single-engine aircraft ("the aircraft") on a flight from Kissimmee, Florida to Lantana, Florida. *See* Third Am. Complaint, 4/29/18, at ¶¶ 35, 42. The aircraft was owned and operated by Flyers Inc. ("Flyers"), a Florida corporation in which Shalloway was a shareholder or member. *See* Third Am. Compl., 4/29/18, at ¶ 5, 43, 68; *see also* Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 2.

Shortly before attempting to land the aircraft at Lantana, Shalloway radioed the airport but then made a series of turns before crashing into a mobile home park ("the crash"). *See* Third Am. Compl., 4/29/18, at ¶¶ 37-

40.  The crash and resulting fire killed Shalloway and another person on the ground, Banny Galicia ("Galicia").[1]

An investigation into the crash revealed that the aircraft had an engine that Lycoming had originally manufactured in 1977 in Pennsylvania ("the engine").  *See* Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 6.[2]  Following service in a different airplane after its original manufacture, the engine returned to Lycoming in June 2002.  Lycoming proceeded to overhaul the engine in Pennsylvania, obtained certifications of its airworthiness, and then shipped it to Flyers's place of business in Florida in August 2002, for installation into the aircraft.  *See* Third Am. Complaint, 4/29/18, at ¶¶ 44-48; Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 39.  Michael Reiman ("Reiman"), a Florida resident, maintained and serviced the aircraft and the engine in Florida.  *See* Third Am. Complaint, 4/29/18, at ¶¶ 44-48.

There is no dispute that, following the accident, Appellee was named the executrix of Shalloway's estate pursuant to a will Shalloway had executed in

_____

[1] Additionally, the crash injured at least two other people on the ground, Delmar Lopez ("Lopez") and his minor child, W.L.  As referenced below, Galicia and Lopez filed separate actions *in Florida* related to the crash.

[2] Appellee denies the "accident engine" was manufactured in 1977 because Lycoming overhauled the engine in 2002.  Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 6.  Nevertheless, Appellee does not dispute that Lycoming sold the original "engine assembly" in 1977.  *See id*.

Florida.[3]  Galicia and Lopez, the individuals killed or injured on the ground in

Florida, commenced actions against Shalloway's estate and AVCO in Florida in

2016 and 2017 ("the Florida actions").  In the Florida actions, AVCO asserted

Florida's statute of repose, **see** Fla. Stat. § 95.031(2)(b) (providing for a

general twelve-year statute of repose in products liability actions subject to

certain exceptions), precluded Galicia's and Lopez's claims against it.  In

February 2022, the Florida trial court agreed with AVCO and granted summary

judgment in favor of AVCO based on Florida's statute of repose.  **See** Order,

**Galicia v. Tropepe**, 2016-CA-000198-AG & **Lopez v. Flyers**,

2106--CA-0077044-MB, 7/28/21, at 10 (attached as Ex. 9 to Appellants'

Mot./Cross-Mot. *In Limine* to Apply Florida Law to Pl.'s Products Liability

Claims against Appellants, 6/14/22); **see also** Order, **Galicia v. Tropepe**,

2016-CA-000198-AG & **Lopez v. Flyers**, 2106-CA-0077044-MB, 2/17/22, at

1 (attached as Ex. P to Pl.'s Mot. *in Limine* to Apply Pennsylvania Law,

5/26/22).

_____

[3] Appellants asserted that the beneficiaries and personal representative of Shalloway's estate are located in Florida and the estate was administered in Florida.  **See** Appellants' Mot./Cross-Mot. *In Limine* to Apply Florida Law to Pl.'s Products Liability Claims against Appellants, 6/14/22, at 110.  Appellee partially denied those assertions and asserted she "opened letters of administration in Pennsylvania for the purposes of bringing this suit" in Pennsylvania.  Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 110.  We decline to consider whether Shalloway's estate should be regarded as a Florida estate in light of the parties' filings and the absence of any record evidence to the contrary.  Nevertheless, it is clear Appellee and her minor daughter are residents of Florida.

Meanwhile, Appellee commenced the instant action in Philadelphia in August 2017, and, in a third amended complaint, asserted the following counts: Count 1—strict liability against Appellants; Count 2—negligence against Appellants; Count 3—breach of express and implied warranties against Appellants; Count 4—recklessness, outrageousness, and willful and wanton conduct against Appellants; Count 5—fraud, misrepresentation, and concealment against Appellants; Count 6-negligence against Reiman and Flyers; Count 7-breach of contract against Reiman and Flyers; Count 8—breach of express and implied warranties against Reiman and Flyers; and Count 9—negligent misrepresentation against Reiman and Flyers. **See** Third Am. Compl., 4/29/18, at ¶¶ 76-170.[4]

With respect to the strict liability count against Appellants, Appellee alleged the engine failed during Shalloway's October 2015 flight because Appellants' defective design and manufacture of the engine resulted in a loss of engine power. **See id**. at ¶¶ 82-86. Additionally, Appellee asserted Appellants had actual knowledge of the defects and failed to issue warnings. **See id**. at ¶¶ 113-15. Appellants responded that there was no evidence of a mechanical defect in the engine and asserted Shalloway had suffered a

_____

[4] Appellee filed an additional complaint in Florida in 2017, but that action was stayed and then discontinued. Appellee explained that she filed the separate action in Florida as a precautionary measure in light of possible jurisdiction issues involving Flyers and Reiman. **See** Pl.'s Resp. in Opp'n to Appellants' Mot. for Leave to File an Am. Answer with New Matter, 3/25/22 at ¶ 4.

medical incident that caused the crash. **See** Appellants' Mot./Cross-Mot. *In Limine* to Apply Florida Law to Pl.'s Products Liability Claims against Appellants, 6/14/22, at ¶¶ 2, 60-62. Moreover, Appellants noted Appellee's own allegations in the third amended complaint that Flyers, a Florida corporation, owned and operated the aircraft and Reiman, a Florida resident, maintained and serviced the aircraft. **See id.** at ¶ 70; **see also** Third Am. Complaint, 4/29/18, at 5, 6, 43, 67, 69 (noting, *inter alia*, Flyers had a duty to supply a safe aircraft and properly oversee its maintenance and Reiman had a duty to ensure the aircraft was returned to service in an airworthy condition having continually performed work on the aircraft for many years before the crash).

As the matter proceeded to trial, Appellee/Plaintiff filed a motion *in limine* seeking a ruling by the trial court that Pennsylvania's substantive products liability law applied to the claims against Appellants.[5] Appellants filed a cross-motion *in limine* in which they argued that the trial court should apply Florida substantive products liability law, in particular, Florida's twelve-year statute of repose.

---

[5] Appellee and Flyers entered into a stipulation for the dismissal of Flyers after Flyers settled. Additionally, Appellants raised the issues concerning the applicability of the Florida statute of repose in their preliminary objections and a motion for summary judgment, which the trial court denied without accompanying opinions.

On July 1, 2022, the trial court entered orders granting Appellee's motion *in limine* to apply Pennsylvania substantive products liability law to her claims against Appellants and denying Appellants' cross-motion *in limine* to apply Florida substantive products liability law.[6] On July 8, 2022, Appellants timely requested that the trial court amend the July 1, 2022 orders to certify that they "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order[s] may materially advance the ultimate termination of the matter." 42 Pa.C.S.A. § 702(b). On July 13, 2022, the trial court granted Appellants' request and amended the orders to include the language required by section 702(b). On August 10, 2022, Appellants timely filed in this Court petitions for permission to appeal the interlocutory July 1, 2022 orders, as amended on July 13, 2022, pursuant to Pa.R.A.P. 1311. *See* Pet. for Permission to Appeal, 83 and 84 EDM 2022, 8/10/22. Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

1. Whether Florida law should apply to products liability claims brought by Florida residents on behalf of Florida residents and an estate administered in Florida, arising from the death in Florida of a Florida resident in an accident that occurred in Florida, involving a Florida-based, maintained, and operated

_____

[6] In its orders, the trial court also denied, without prejudice, the portion of Appellee's motion *in limine* which sought to apply Pennsylvania law to her claim for punitive damages, as well as the portion of Appellants' motion *in limine* which sought to apply Florida law to Appellee's claim for punitive damages; however, those rulings are not at issue in this appeal.

aircraft, owned and used by a Florida company, allegedly caused by a defective engine purchased in Florida and used exclusively in Florida, and manufactured and overhauled in Pennsylvania by a company licensed to do business in Florida?

2. Whether Florida's 12-year statute of repose should apply to, and bar, [Appellee's] product liability claims?

Appellants' Brief at 5-6.

Initially, we must address Appellants' petitions for permission to appeal. This Court, in its discretion, may entertain an appeal of an interlocutory order if it is satisfied that there is a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. **See** 42 Pa.C.S.A. § 702(b); **see also** Pa.R.A.P. 1311(a).

Based on our review, we agree with the trial court there is substantial ground for difference of opinion as to whether the substantive products liability laws of Pennsylvania or Florida should apply to the products liability claims at issue in this litigation. We further conclude that this question of law is controlling, as it may determine whether such claims may proceed or whether they are barred by a statute of repose. Accordingly, as an immediate appeal from the interlocutory July 1, 2022 orders, as amended on July 13, 2022, will materially advance the ultimate termination of the matter, we grant Appellants' petitions for permission to appeal those orders.[7]

_____

[7] On July 29, 2022, Appellants also filed notices of appeal from the July 1, 2022 orders, citing Pa.R.A.P. 313. However, given our decision to grant permission to appeal the orders, we need not address whether they are collateral orders pursuant to Rule 313.

This Court generally reviews a trial court's decision to grant or deny a motion *in limine* subject to an evidentiary abuse of discretion standard of review. *See **Frazer v. McEntire***, 265 A.3d 777, 783 (Pa. Super. 2021). Where the issues involve questions of law, however, our standard of review is *de novo* and our scope of review is plenary. *See **Anderson v. McAfoos***, 57 A.3d 1141, 1148-49 (Pa. 2012); ***accord Commonwealth v. Lewis***, 39 A.3d 341, 345 (Pa. Super. 2012). "The way in which the laws of a foreign jurisdiction operate presents a question of law." ***Melmark, Inc. v. Schutt by & Through Schutt***, 206 A.3d 1096, 1105 (Pa. 2019) (citations omitted).

In addressing which state's substantive law to apply, we employ the choice of law principles that our High Court framed in ***Griffith v. United Air Lines, Inc.***, 203 A.2d 796 (Pa. 1964). In ***Griffith***, our Supreme Court shifted its approach in determining which substantive law to apply in tort cases. Prior to ***Griffith***, Pennsylvania applied the *lex loci delicti* rule. The *lex loci delicti* rule applied the substantive law of the place where the injury occurred. *See **id**. at 801. The High Court abandoned that mechanical approach in favor of a more flexible rule which permits the place "having the most interest in the problem," based on a particular factual context, control of the legal issues and allows for application of the policy of the jurisdiction "most intimately concerned with the outcome of the particular litigation." ***Id**. at 806 (internal citations, brackets, and quotation marks omitted). Importantly, in adopting this flexible approach, the ***Griffith*** Court discerned a compelling policy basis for this shift, noting that "[i]n this age of increasingly rapid transit of people

and goods . . . choice of law has become more and more significant . . . it is of utmost importance that our Court re-examine its position . . . and make certain that our rules are in harmony with the realities of this age." *Id*. at 801. This shift was in reaction to the rapid expansion of air travel that allowed people and goods to be moved further distances in a much shorter time period. *See generally id.* at 800-01.[8]

"Section 145(2) of the Restatement (Second) of Conflict[ of Laws] sets forth the contacts to be considered in applying the analysis required under *Griffith*." *Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984, 988 (Pa. Super. 2016). Those contacts include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See* Restatement (Second) of Conflict of Laws § 145 (1988) ("Restatement (Second)"). We evaluate the section 145 factors mindful of the overarching choice of law principles enumerated in section 6 of the Restatement (Second). Those section 6 considerations include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of the other interested

---

[8] In *Griffith*, the decedent, a Pennsylvania resident, purchased an airline ticket from United Airlines, a Delaware Corporation with a principal place of business in Chicago, to travel from Philadelphia to Arizona. *See Griffith*, 206 A.2d at 797. The flight, however, crashed in Colorado while landing for a scheduled lay over. *See id*.

- 10 -

states and the relevant interests of those states in determination of a particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *See id*. § 6 (hereinafter, the "section 6 considerations").

A court's analysis does not involve simply counting the number of section 145 factors. *See Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970); *accord McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 109 (Pa. Super. 2015). Moreover, section 146 of the Restatement (Second) of Conflict of Laws establishes a presumption that applies the law of the state where the injury occurred, unless another state has a more significant relationship to the occurrence and the parties. That section provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id*. § 146; *accord Marks*, 136 A.3d at 988.

Under Pennsylvania choice of law rules, we must first look to see if a true conflict exists between the states' laws. *See Stange v. Janssen Pharms., Inc.*, 179 A.3d 45, 65 (Pa. Super. 2018). A true conflict occurs where an analysis of the policies underlying each of the states' law reveals that application of the respective state's law would further its corresponding

policy. *Id*.; *see also Melmark*, 206 A.3d at 1104 (noting that the requirement that a court first consider whether a "true conflict" exists ensures that the issue does not present a "false conflict," which occurs when the laws of both states would produce the same result, or one of the states has no meaningful policy-based interest in the issue raised).

In the present case, an examination of the policies of Pennsylvania and Florida reveals a true conflict between Pennsylvania and Florida law. Pennsylvania has adopted strict products liability, while Florida recognizes strict liability, but implements a statute of repose. Pennsylvania's adoption of strict products liability shifts the burden of injuries suffered by consumers due to a defective product onto producers and induces manufacturers to be more careful in the design, manufacture, and warnings associated with their products. *See Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 911 (Pa. Super. 2007) (observing that "Pennsylvania's judicature in the area of strict liability rests on the premise that where a plaintiff has been injured by a defective product, as between the innocent consumer and a manufacturer of a defective product, the manufacturer should bear the loss") (internal citation and quotations omitted).

A statute of repose is a mechanism used to limit or bar the temporal extent or duration of liability for tortious acts. *See Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017). That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. *See id*. at 644. A statute of repose bars a suit that is

brought after a specified time after defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury. **See id**. Statutes of repose operate as substantive law by extinguishing a cause of action outright and precluding revival. **See Kornfeind v. New Werner Holding Co.**, 280 A.3d 918, 923 (Pa. 2022).

Pennsylvania has not adopted a statute of repose for products liability claims, and, in **Kornfeind**, our Supreme Court held that Pennsylvania's Uniform Statute of Limitations on Foreign Claims (the "borrowing statute") does not automatically borrow a foreign state's statute of repose to claims accruing outside of Pennsylvania but litigated in Pennsylvania. **See id**. at 928-29 (discussing 42 Pa.C.S.A § 5521).[9] Although Florida recognizes strict products liability, the Florida legislature has enacted a statute of repose which protects manufacturers from products liability claims if the product has been in use and caused a harm more than twelve years after the first delivery to the first purchaser, unless an exception applies. **See** Fla. Stat. § 95.031(2)(b). Specifically, Florida's statute of repose states, in relevant part:

_____

[9] In **Kornfeind**, our Supreme Court reasoned that the plain language of Pennsylvania's "borrowing statute" encompassed only statutes of limitations and noted the distinction between statutes of limitations, which are procedural in nature, and statutes of repose, which are substantive in nature. **See Kornfeind**, 280 A.3d at 927-28. The Court noted that "when Pennsylvania's longer repose period is in conflict with a foreign jurisdiction's shorter repose period, . . . a Pennsylvania court will conduct a choice of law analysis." **Id**. at 928.

(b). . . Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product. All products, except those included within subparagraph 1. or subparagraph 2., are conclusively presumed to have an expected useful life of 10 years or less.

\* \* \* \*

(d) The repose period prescribed within paragraph (b) is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect. Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support. Maintaining the confidentiality of trade secrets does not constitute concealment under this section.

Fla. Stat. Ann. § 95.031(2)(b)(1)-(2), (d). Statutes of repose generally promote diligence in the prosecution of claims, eliminate the potential abuse of stale claims, and ultimately foster certainty and finality for manufacturers. *Cf*. *Lamb v. Volkswagenwerk A.G.* 631 F. Supp. 1144, 1147 (S.D. Fla. 1986).[10]

---

[10] Decisions of the federal courts lower than the United States Supreme Court possess a persuasive authority but do not bind this Court. *See Budai v. Country Fair, Inc.*, 296 A.3d 20, 23 (Pa. Super. 2023), *appeal denied*, 307 A.3d 1198 (Pa. 2023). Additionally, our Supreme Court has noted that this Court may take notice of a state's statutory provision and reported decisions
*(Footnote Continued Next Page)*

Here, application of Pennsylvania's products liability law, which favors consumer protection, or Florida's statute of repose, which extinguishes products liability claims after a specified duration, would further, or hinder, each state's policies. Additionally, the choice of law may determine the outcome of this case.[11] Thus, we conclude there is a true conflict, and we next consider "which state has the most significant relationship to the occurrence and the parties," mindful that "[t]he overriding consideration is which state has 'a priority of interest in the application of its rule of law' so as to vindicate the policy interests underlying that law." *Melmark*, 206 A.3d at 1107 (internal citations omitted).

_____

when considering how the laws of that state operate. *See Melmark*, 206 A.3d at 1105.

We note that the general principles expressed in *Lamb* addressed Florida's previous statute of repose. The Florida Supreme Court initially concluded the former statute was unconstitutional, but then revisited its own decision five years later and upheld that statute's constitutionality. *See Pullum v. Cincinnati, Inc.*, 476 So.2d 657, 659-60 (Fla. 1985) (concluding that statutes of repose constitute a valid legislative means to restrict causes of action in order to achieve certain public interests). The Florida legislature then repealed the former statute of repose in 1986. The current version of Florida's statute of repose was enacted in 1999. No appellate court has found the 1999 statute unconstitutional, nor has the Florida Supreme Court abrogated the *Pullum* decision.

[11] The trial court also concluded that a true conflict exists. *See* Trial Ct. Op., 10/20/22, at 7-8. Neither party disputes this ruling on appeal. We note, however, that in the trial court Appellee asserted that there was a false conflict, *see* Appellee's Mot. *in Limine* to Apply Pennsylvania Law, 5/26/22, at ¶ 55.

Appellants, in their first issue, contend that Florida has the most significant relationship to the parties and the accident. Appellants maintain that because Florida is the site of the accident and decedent's death, there is a presumption that Florida law applies. *See* Appellants' Brief at 21-22 (citing *Marks*, 136 A.3d at 988). Appellants assert that Florida's interests are strengthened by the numerous other connections to Florida, including Shalloway's and Appellee's residence in Florida. *See id*. at 22. Appellants argue that Florida has a substantial interest in having its tort policies followed when its residents seek to obtain redress for accidents occurring within its borders. *See id*. at 23. Appellants contend that, when Florida's statute of repose is applied to cases arising from accidents within its borders, the policies embodied in the statute are carried out, and the goals of encouraging and regulating commerce are accomplished. *See id*. at 23-25.

Florida's interests, Appellants emphasize, are not lessened simply because the products allegedly responsible for accidents there originated elsewhere. *See id*. at 23. Rather, they insist nothing in Florida's statute of repose limits its application to Florida corporations or Florida-made products. *See id*. at 19. They assert Florida courts have frequently applied the statute of repose to non-Florida corporations. *See id*. at 19, 28. Appellants further note that in the Florida actions brought by Galicia and Lopez based on the same crash, the Florida trial court addressed a nearly identical choice of law issue and concluded, given the facts that bear out the overwhelming Florida connections, that Florida's interest in having its laws apply greatly outweigh

Pennsylvania's interests. *See id*. at 26 (citing Order, *Galicia v. Tropepe*, 2016-CA-000198-AG & *Lopez v. Flyers*, 2106-CA-0077044-MB, 7/28/21, at 10).

Appellants also assert Pennsylvania's contacts and interests are minimal in comparison with Florida's. *See id*. at 32-36. Appellants highlight that: (1) in 2002, they sold the engine to Flyers, a Florida company, which owned, operated, maintained, used, and housed the subject engine and aircraft in Florida; (2) the 2015 crash occurred during a flight from one location in Florida to another location in Florida; (3) Shalloway was a Florida resident; (4) Shalloway died in Florida; and (5) Appellee, and her daughter, are Florida residents.[12] *See id*. at 33-34. Appellants assert that Pennsylvania's "sole contact" in this matter—Lycoming's 2002 overhaul of an existing engine in Pennsylvania before its shipment to Florida— is far too weak to conclude that Pennsylvania has a priority of interest in having its law applied. *Id*. at 34.

The trial court concluded that Pennsylvania has a greater interest in the application of its law to this case, but also noted that Florida had significant contacts to the October 2015 crash, which included the operation of Flyers's club in Florida; Lycoming's sale and shipment of the overhauled engine to Flyers for assembly in Florida; and Shalloway and Appellee's residence in

_____

[12] Appellants also assert that Shalloway's estate is being administered in Florida. *See* Appellants' Brief at 34. However, as noted above, Appellee partially denied that allegation and admitted only that she "opened letters of administration in Pennsylvania for the purpose of bringing this suit." Pl.'s Resp. in Opp'n to Appellants' Mot. *in Limine*, 6/21/22, at ¶ 100.

Florida. **See** Trial Ct. Op., 10/20/22, at 5, 8-9. Nevertheless, the trial court determined that, under a Pennsylvania choice of law analysis of products liability, Pennsylvania had the more significant relationship to Appellee's products liability claim because Appellants' alleged "tortious" conduct occurred in Pennsylvania. **Id**. The trial court reasoned "Pennsylvania's policy of protecting individuals from torts caused by defective products manufactured and distributed in the Commonwealth, for the life of the product's use, would be harmed by applying Florida's [twelve]-year [s]tatute of [r]epose." **Id**. at 8.

Despite the fact that a Florida court had already applied its statute of repose to Appellant's litigation involving the same plane crash, the trial court reasoned that Florida law would not be frustrated by the application of Pennsylvania law to a Pennsylvania defendant whose Pennsylvania-based actions allegedly caused plaintiffs' injuries. The court noted "Florida has **no** interest in applying its [s]tatute of repose to protect non-Florida manufacturers brought by Florida residents in the manufacturer's home state," even though Florida had applied it in related cases to these very Appellants for the same accident. **Id**. at 9 (emphasis added).[13]

_____

[13] In support of its ruling, the trial court cited the following five cases, **see** Trial Ct. Op., 10/20/22, at 6-9, none of which specifically analyze the application of state products liability law: (1) **Griffith** (whether Colorado or Pennsylvania damages law applied); (2) **Stange** (failure to warn products liability litigation remanded to trial court to address choice of law on damages because trial court failed to address punitive damages claim); (3) **Budtel**
*(Footnote Continued Next Page)*

Following our review, we conclude the trial court undervalued Florida's interests; its significant relationship to the litigation; and the qualitative depth of the **Griffith** and section 145 factors, as well as section 6's considerations impacting Florida's and Pennsylvania's relationship and interests in this specific litigation. As instructed by the High Court in **Griffith**, we look at both the interests of Florida and Pennsylvania in relation to the "particular litigation," given the "particular factual context" of the litigation, to determine whether Florida or Pennsylvania law applies. **Griffith**, 203 A.2d at 806. **Griffith** reviewed the place of injury, place of conduct, domicile of parties, and the place where the relationship between the parties is centered, with an eye toward the application of the policy of the jurisdiction most significantly connected to the outcome. **See id**. at 806-07.

Here, the accident occurred in Florida; the company that owned, assembled and maintained the plane is located in Florida; the mechanic who serviced the plane was a Floridian; Shalloway was a Floridian; and his family are Floridians. Lycoming, a Pennsylvania company, after designing,

---

**Associates, LP v. Cont'l Cas. Co.**, 915 A.2d 640 (Pa. Super. 2006) (declaratory judgment action regarding a contract dispute regarding whether the **Griffith** choice of law test should apply, and when the court answered in the affirmative the trial court held a "false conflict" existed); (4) **Lacey v. Cessna Aircraft Co**., 932 F.2d 170 (3d Cir. 1991) (federal litigation determining forum *non conveniens* motion involving international corporations); and (5) **Garcia v. Plaza Oldsmobile Ltd.**, 421 F.3d 216 (3d Cir. 2005) (federal litigation determining choice of law regarding motor vehicle accident liability, trial court held "false conflict" existed between New York and Pennsylvania).

manufacturing, and overhauling the engine, then shipped the engine to Florida. The engine was installed in Florida.

With respect to Florida's interests, our review of Florida's statute of repose reveals no basis to conclude that the Florida legislature intended to protect only in-state manufacturers or, as suggested by the trial court, that Florida had no interest in applying its statute of repose to non-Florida manufacturers. *See* Fla. Stat. § 95.031(2)(b).[14] Instead, the triggers for Florida's statute of repose are the delivery to the first purchaser or end user, the passage of time, and the occurrence of the harm. *See id*. The statute thus extinguishes a products liability cause of action without reference to a manufacturer or the geographic location of the manufacturer. *See id*. Indeed, in the Florida actions related to the same underlying crash, a Florida court has already ruled that Florida products liability law (specifically, Florida's statute of repose) not Pennsylvania law, controls, even though Appellants are out-of-state manufacturers. *See* Order, *Galicia v. Tropepe*, 2016-CA-000198-AG & *Lopez v. Flyers*, 2106-CA-0077044-MB, 7/28/21, at 10.

Florida's interests are clear: Florida's statute of repose, which is a specific response to strict liability in products liability actions, intends to

_____

[14] On its face, Florida clearly has an interest in applying its statute of repose to non-Florida manufacturers, as the Florida court has already done so in Florida actions involving the same crash at issue in this appeal. *See* Order, *Galicia v. Tropepe*, 2016-CA-000198-AG & *Lopez v. Flyers*, 2106-CA-0077044-MB, 7/28/21, at 10.

reduce perpetual liability for products, and creates a presumption that a product's "useful life" ends after ten years, after which the statute of repose shifts the risk and costs for injuries for products in the stream of commerce away from manufacturers to the those who use a product after its "useful life." *See* Fla. Stat. § 95.031(2)(b); *see also* Florida Staff Analysis, H.B. 775, 6/2/99.[15]   Such policies intend to promote and serve not only Florida's own domestic interests in its economy and courts, but also promote broader commercial interests by encouraging certainty and finality for all manufacturers, promoting innovation to enhance product safety and consumer satisfaction, and reducing the costs of liability insurance.   *See* Florida Staff Analysis, H.B. 775, 6/2/99.  Moreover, Florida's products liability statute of repose does not abolish a cause of action, but rather intends to shift responsibility for older products from manufacturers to those who use and maintain older products.  *See id*.  Thus, contrary to the trial court's conclusion that Florida has no interest, we conclude Florida has an interest in allocating the risks and costs for injuries suffered by its citizens in Florida regardless of whether the manufacturer is in- or out-of-state.  This is especially so where, as here, the product enters and has remained exclusively in Florida's stream

---

[15] A court may read Florida's staff analyses in conjunction with legislative history to discern legislative intent.  *Cf*. *Am. Home Assur. Co. v. Plaza Materials Corp.*, 908 So.2d 360, 369 (Fla. 2005).

of commerce and under the maintenance and control of Floridians for over a

decade.[16]

_____

[16] Although the trial court cited minimal case law when it concluded Florida has no interest in this case, Appellee asserts Florida has no or minimal interest in the application of its law based on **Reyno v. Piper Aircraft Co.**, 630 F.2d 149 (3d Cir. 1980), *rev'd*, 454 U.S. 235 (1981), **Lacey**, and **Mahne v. Ford Motor Co.**, 900 F.2d 83, (6th Cir. 1990). Additionally, Appellee suggests the application of Pennsylvania law is consistent with decisions in **Sikkelee v. Precision Airmotive, Corp.**, No. 4:07-CV-00886, 2012 WL 12862562 (M.D. Pa. Mar. 13, 2012) (unpublished decision), and **Lallo v. Avco Corp., et al.**, No. 02501, July Term, 2015 (Pa. C.P. Phila.), *aff'd*, **Dietz v. AVCO Corp.**, 279 A.3d 1288, 2022 WL 1675017 (Pa. Super. 2022) (unpublished memorandum) (capable of citation as persuasive authority under Pa.R.A.P. 126(b)). These cases are not binding on this Court, although they may be used for their persuasive value. **See Budai**, 296 A.3d at 23; **Wilson v. Parker**, 227 A.3d 343, 356 (Pa. Super. 2020).

We acknowledge that **Reyno**, **Lacey**, **Mahne** and **Sikkelee** state that a jurisdiction that has not adopted a strict products liability or, like Florida, limits strict products liability by a statute of repose, has purely domestic interests to protect its own manufacturers and its own courts from stale claims. Those cases conclude that such a state has little or no interest in the application of its own laws in a products liability action against a foreign manufacturer in the manufacturer's home state. **See Lacey**, 932 F.2d at 188; **Reyno**, 630 F.2d at 167; **Mahne**, 900 F.2d at 88; **Sikkelee**, 2012 WL 12862562, at *4. However, we do not consider these cases dispositive of every specific fact pattern, statute, and state interest at issue in a conflict of law analysis. As **Griffith** instructs, choice of law analysis requires flexibility in order to determine the place that has the most interest within the factual context of the specific litigation. **See Griffith**, 203 A.2d at 805-06.

We add that **Reyno** and **Lacey** involved international *forum non conveniens* issues, the test for which involved a balancing of private and public interests, wherein a choice of law analysis is but one factor when considering benefits of holding trial in a forum familiar with the law governing the case. **See Piper Aircraft**, 454 U.S. at 260 (reversing **Reyno**). In **Mahne**, the Sixth Circuit Court of Appeals concluded Florida did not have an interest in applying its statute of repose in an action brought against Ford Motor Company, in Michigan, where Ford, *inter alia*, designed an allegedly defective automobile
*(Footnote Continued Next Page)*

Moreover, unlike ***Griffith***, where the fortuitous location of the accident minimized that state's interest in having its law applied, several section 145 factors make clear that Florida maintains a significant interest in the application of its statute of repose. Flyers, a Florida company, purchased the overhauled engine from Lycoming in 2002. Lycoming delivered the engine to

---

that was licensed in Florida, involved an accident in Florida, and injured the plaintiff, a Florida resident. Notably, in that case, the Court applied Michigan's choice of law standard (an assumption that the law of the forum controls), which is distinguishable from the Pennsylvania standard. ***See Mahne***, 900 F.2d at 87. In ***Dietz***, this Court affirmed a choice of law analysis favoring Alabama, where the airplane engine manufacturer's successor-in-interest had its principal place of business, over Ohio, the domicile of the deceased pilot and his wife, which had a statute of repose. It must also be noted that many of the facts are distinguishable: ***Dietz*** involved a plane crash in Missouri; the pilot resided in Ohio; the flight was a return trip to Ohio from another state; and the plane's engine was built in New York. ***See Dietz***, 2022 WL 1675017, at *1 & nn.1, 3, *3-4.

With respect to a case specifically involving a Lycoming engine, ***Sikkelee***, the plaintiff and decedent were residents of South Carolina, and the decedent was traveling within North Carolina when the plane crash occurred. The plane had a Lycoming engine designed and manufactured in Pennsylvania in 1969, installed factory new in the plane in 1998, and was used until an accident in 2005. The ***Sikkelee*** court found the conflict between Pennsylvania's products liability law and North Carolina's six-year statute of repose constituted a "false conflict"; however, the court proceeded to conclude the differences between Pennsylvania's comparative negligence and North Carolina contributory negligence presented a true conflict, in which Pennsylvania had a greater interest in the application of its strict liability and comparative negligence approaches. ***Sikkelee***, 2012 WL 12862562, at *4, 7-8. Unlike ***Sikkelee***, where North Carolina had few contacts with the accident other than being the site of the crash (similar to ***Griffith***), Florida has far more significant contacts and relationship with the occurrence and the parties in the present case, as discussed herein.

Flyers in 2002 in Florida, where it was installed in the aircraft. Flyers owned and operated the aircraft and maintained the engine since that time. Reiman, a Florida resident, was responsible for the maintenance of the aircraft and engine. Unlike *Sikkelee* and *Griffith*, the 2015 accident did not fortuitously occur in Florida; rather, it was an intrastate flight plan wholly within Florida. Shalloway, who was the pilot of the aircraft, as well as Appellee and her minor child, were residents of Florida. These contacts clearly, directly, and significantly impact Florida's interests in its statute of repose relating to injuries caused to its citizens from accidents occurring in Florida.

Yet another of the *Griffith* factors considered the place where the relationship of the parties centered in its choice of law analysis. *Id.* at 807. Here, Appellee and Appellants have no direct relationship. Indeed, Appellee has alternately asserted that Shalloway relied on Reiman, a Florida resident, and Flyers, the Florida purchaser of the engine, owner of the aircraft, and the club in which Shalloway was a member, to ensure the aircraft was suitable for flight. *See* Third Am. Compl., 4/29/18, at ¶ 68. Thus, any direct relationships in this litigation existed between Floridians.

We acknowledge that Pennsylvania's interests should not be minimized. Lycoming conducts business in Pennsylvania. The alleged conduct relevant to Appellee's products liability claims (*i.e.*, that the engine was originally designed, certified, manufactured, and subsequently overhauled in Pennsylvania) all occurred in Pennsylvania. As recognized in *Lacey* and *Sikkelee*, Pennsylvania has an interest in the application of its strict product

liability law to Pennsylvania manufacturers. *See Lacey*, 932 F.2d at 188; *Sikkelee*, 2012 WL 12862562, at *7.

The task of a court, however, is to determine which state has "a priority of interest in the application of its rule of law" so as to vindicate the policy interests underlying that law. *Melmark*, 206 A.3d at 1107. Here, we conclude that Florida's policies concerning risks and costs of injuries and death suffered from an allegedly defective product are paramount when the product is purchased by a corporate resident of the state, the product is directly delivered to that state, the product is installed and used in that state for more than a decade, the alleged failure of the product occurs in that state, and the injured parties seeking relief are all domiciled in that state. *See Giovanetti v. Johns-Manville Corp.*, 539 A.2d 871, 873 (Pa. Super. 1988) (noting "Pennsylvania can certainly be viewed as possessing a legitimate interest in ensuring that Pennsylvania companies do not manufacture or distribute hazardous products which cause injury[,]" but concluding "[t]hat interest . . . [wa]s clearly eclipsed by the numerous contacts between [another state] and the present cause of action"), *abrogated on other grounds by Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146 (Pa. 1997). This conclusion is bolstered by the fact that a Florida court, in the Florida actions involving the same crash at issue here, has already ruled that Florida law should govern when allocating the respective rights and liabilities of individuals injured in that state by a foreign manufacturer of an allegedly defective product. *See*

Order, *Galicia v. Tropepe*, 2016-CA-000198-AG & *Lopez v. Flyers*, 2106-CA-0077044-MB, 7/28/21, at 10.[17]

As noted by the court in *Sikkelee*, "Conflict of laws analysis can be bedeviling for even the most practiced attorneys and experienced jurists[,]" *see Sikkelee,* 2012 WL 12862562, at *8, and there are compelling arguments in support of the parties' respective requests; however, given the choice of law balancing tests put forth in *Griffith*, the section 145 factors in combination with the section 6 choice of law principles, and applying the specific and unique facts of this case, we conclude that Florida has the priority of interest in the application of its products liability law when defining the rights of Appellee, Shalloway's estate, and Appellee's and Shalloway's minor daughter, and the liability of Appellants. Accordingly, we reverse the trial court in so far as it concluded that Florida's products liability law should not govern at trial.

In their second issue, Appellants assert they are entitled to application of Florida's statute of repose and bar Appellee's claims against them as a matter of law. We decline to consider this issue for numerous reasons. First, Appellants did not specifically request this relief in their cross-motion *in limine*

_____

[17] The comments to the Restatement (Second) suggest "a state should have regard for the needs and policies of other states and of the community of states[;]" uniformity of result is an important value and "[t]o the extent [it is] attained in choice of law, forum shopping will be discouraged[;]" and, while the purposes of rules denying liability are more difficult to discern than rules imposing liability, "[a] rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability." *See* Restatement (Second) of Conflicts of Law § 6 cmt. d., i.; *id*. § 145 cmt. on subsection (1), c.

to apply Florida law. Second, while Appellants asserted that Florida law should bar Appellee's action in response to Appellee's motion *in limine*, they did not, as the parties essentially moving for summary judgment, provide the trial court with a sufficient analysis of the record to address whether there were genuine issues of material fact concerning possible exceptions to statute of repose. Third, the trial court's order did not address this specific issue. Lastly, even if this Court were inclined to address this issue without the benefit of a trial court opinion, Appellants' conclusory assertions in their lead and reply brief are devoid of any meaningful attempt to discuss the record or law concerning possible exceptions to Florida's statute of repose. Thus, this issue is waived for the purpose of this appeal. *See* Pa.R.A.P. 302, 2119(a).

Petitions for permission to appeal granted. Orders reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2025